[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
On January 9, 1996, the plaintiff, John Fracassini, Executor of the Estate of Mary Lewis, filed a three count complaint alleging breach of contract, violation of the Connecticut Unfair Trade Practices Act (CUTPA) and negligence against the defendants, O'Connor Real Estate, Inc. and Carmella Errico. The plaintiff alleges in his complaint that he listed an asset of the estate, a house and property known as 200 Chelsea Street, Stratford, Connecticut, with O'Connor Real Estate, Inc. (Broker) through its' agent Errico, on September 1, 1993. The plaintiff further alleges that the defendants were given a key to the premises and thereafter had control of the premises. The CT Page 3037 plaintiff alleges that on December 20, 1993, a window in the house was left open, causing a water pipe to freeze and then to burst, thereby causing damage to the house. On June 6, 1996, the Broker filed an apportionment complaint against Nova Realty, alleging that the damages alleged by the plaintiff were caused by Nova Realty because they were the last real estate company to show the house.
On October 16, 1996, the defendants filed a motion for summary judgment on the plaintiff's complaint, along with a memorandum of law, on the ground that there is no genuine issue of fact since the defendants had no duty, contractual or otherwise, to manage or inspect the premises, and that the lockbox agreement signed by the plaintiff indemnified the defendants for any property damage. The plaintiff filed a memorandum in opposition on November 11, 1996, to which the defendants filed a reply on November 22, 1996.
The defendants first argue that they had no contractual duty to inspect or manage the premises. The plaintiff argues that Errico undertook the obligation to inspect the premises
The defendants state that the court is limited to the four corners of the agreement, and that the listing agreement and lockbox agreement signed by the parties do not impose a duty on the defendants to inspect or maintain the premises. "The parol evidence rule does not of itself . . . forbid the presentation of `parol evidence,' that is, evidence outside the four corners of the contract concerning matters governed by an integrated contract, but forbids only the use of such evidence to vary or contradict the terms of such a contract Parol evidence offered solely to vary or contradict the written terms of an integrated contract is, therefore, legally irrelevant. When offered for that purpose, it is inadmissible not because it is parol evidence, but because it is irrelevant. By implication, such evidence may still be admissible if relevant (1) to explain an ambiguity appearing in the instrument; (2) to prove a collateral oral agreement whichdoes not vary the terms of the writing; (3) to add a missing term in a writing which indicates on its face that it does not set forth the complete agreement; or (4) to show mistake or fraud" (Emphasis added; internal quotation marks omitted) HeymanAssociates No. 1 v. Insurance Co. of Pennsylvania, 231 Conn. 756,780, 653 A.2d 122 (1995).
The listing and lockbox agreements do not contain any CT Page 3038 agreement by the defendants to inspect or maintain the premises, but rather, the agreements are silent on the issue. In her affidavit, Clare Hoff, the daughter of Mary Lewis, attests that the defendant Errico stated that she would take care of everything at the house. The plaintiff attests that the defendants were retained by him to take over and control the property. Thus, if an oral agreement was made between the plaintiff and the defendants to maintain and inspect the property, such an agreement would not vary or contradict the terms of the agreements submitted. Therefore, whether the plaintiff and defendants had a collateral oral agreement presents a genuine issue of material fact
Regarding the negligence claim, the defendants contend that they had no duty to manage or inspect the premises, that they were not the last to enter the premises, and that the lockbox agreement contained an indemnification agreement
As discussed above, whether the defendants had assumed a duty to manage and inspect the property through an oral collateral agreement is a genuine issue of material fact. Additionally, the issue of who actually left the window open and caused the resulting damage is also a genuine issue of material fact. However, in regard to indemnification the lockbox agreement states: "The undersigned further agrees to indemnify and hold harmless, the listing office and Broker, all members of The Greater Bridgeport Multiple Listing Service, Inc., and The Greater Bridgeport Board of REALTORS, Inc., from personal injury or property damage, by reason of the permission
"The courts have held that unambiguous contract language which does not violate public policy is to be enforced as between the parties to a contract even when the result is that one is indemnified for its own negligence" Pyszkowski v. CampbellAssociates General Partnership, Superior Court, judicial district of New Haven at New Haven, Docket No. 343312 (May 16, 1995, Hadden, J.), citing, Burkle v. Car Leasing Co.,1 Conn. App. 54, 467 A.2d 1255 (1983). The plaintiff attests that the lockbox agreement which he signed was presented to him as a requirement of the Greater Bridgeport Board of Realtors, and that at no time was it referred to as an indemnification agreement "`[T]he general rule is that where a person of mature years who can read or write signs or accepts a formal written contract affecting his pecuniary interests, it is his duty to read it, and notice of its contents will be imputed to him if he negligently fails to do so; CT Page 3039 but this rule is subject to qualifications, including the intervention of fraud or artifice, or mistake not due tonegligence, and applies only if nothing has been said or done to mislead the person sought to be charged or to put a man of reasonable business prudence off his guard in this matter'" (Emphasis in original.) G R Tire Distributors Inc. v. AllstateIns. Co., 177 Conn. 58, 61-62, 411 A.2d 31 (1979). The plaintiff has not submitted any evidence of fraud or artifice, only that the lockbox authorization was never referred to as an indemnification agreement. However, the indemnification agreement holds the defendants harmless for personal injury or property damage "by reason of the permission." The plaintiff has alleged and attested that the defendants agreed to control the property. A question of fact exists as to whether the negligence alleged arises out of the listing agreement or lockbox agreement, or out of a collateral oral agreement to which the indemnification clause does not apply. Additionally, whether the defendants had a duty to maintain and inspect the property arising out of such an oral contract presents a genuine issue of material fact
The defendants also maintain that the plaintiff cannot show that the they were engaged in any unfair or deceptive trade practices. The plaintiff contends that the defendants agreed to control the premises, which he relied on to his detriment, and that such actions constitute a CUTPA violation
"Section 42-110b(a) provides: `No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.' In determining whether certain acts constitute a violation of this act, `we have adopted the criteria set out in the cigarette rule by the federal trade commission . . . (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive or unscrupulous; (3) whether it causes substantial injury to consumers [(competitors or other businessmen)]." Williams Ford, Inc. v. Hartford Courant Co.,232 Conn. 559, 591, 657 A.2d 212 (1995)
The plaintiff attests that he relied upon the defendants' representations that they would take control of the property to his detriment "The essential elements of an action in common law CT Page 3040 fraud . . . are that: (1) a false representation was made as a statement of fact; (2) it was untrue and known to be untrue by the party making it; (3) it was made to induce the other party to act upon it; and (4) the other party did so act upon that false representation to his injury" Weisman v. Kaspar, 233 Conn. 531,539, 661 A.2d 530 (1995). The plaintiff implies in his memorandum that the defendants' acts were fraudulent, however, in his affidavit the plaintiff states that Errico "admitted to me that she had never inspected or gone to the property subsequent to the listing of the property to inspect it and to make sure that it was secure." The plaintiff does not allege in the complaint, or present any evidence that the defendants made any false representations which were untrue and known to be untrue when they were made. Therefore, the allegations and evidence submitted only rise to the level of either a breach of contract or simple negligence. "[T]he first prong [of the cigarette test], standing alone is insufficient to support a CUTPA violation, at least when the underlying claim is grounded solely in negligence." Williams,Ford, Inc. v. Hartford Courant Co., supra, 232 Conn. 593. Furthermore, "`[a] simple breach of contract, even if intentional, does not amount to a violation of the Act; a [claimant] must show substantial aggravating circumstances attending the breach to recover under the Act . . . ." EmleeEquipment Leasing Corp. v. Waterbury Transmission Inc.,41 Conn. Sup. 575, 580, 595 A.2d 951 (Blue, J. 1991). Here, the plaintiff has not submitted evidence sufficient to show more than ordinary negligence or substantial aggravating factors accompanying a breach of contract, and therefore is unable to recover under CUTPA. The plaintiff also argues that the lockbox agreement is deceptive in that the indemnification language seems to apply only to personal property, and the defendants are attempting to apply it to damages to the premises. Nevertheless, the language of the indemnification agreement unambiguously refers to "property damage" and does not limit itself to personal property, and therefore, the lockbox agreement is not deceptive. Accordingly, summary judgment will be granted as to count two.
CONCLUSION
Based on the foregoing, the defendants' motion for summary judgment (#111) is denied as to counts one and three, and granted as to count two
So ordered. CT Page 3041
MICHAEL HARTMERE JUDGE OF THE SUPERIOR COURT