[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE MOTION FOR SUMMARY JUDGMENT (No. 119)
The narrow question presented by the motion for summary judgment now before the court is the effect of a release from liability signed by the plaintiff prior to CT Page 3593 the accident injuring her. For the reasons set forth below, the release does not bar the plaintiff from pursuing this action.
On January 7, 1999, the plaintiff, Megan Malin, went to the Powder Ridge Ski Area to go snow tubing. The defendant, White Water Mountain Resorts of Connecticut, Inc. ("White Water"), does business as Powder Ridge. Malin paid her admission fee and then was given a document to sign. That document provides as follows:
 SNOWTUBING RELEASE FROM LIABILITY PLEASE READ CAREFULLY BEFORE SIGNING
1. I accept use of a snowtube and accept full responsibility for the care of the snowtube while in my possession.
2. I understand that there are inherent and other risks involved in SNOWTUBING, including the use of lifts and snowtube, and it is a dangerous activity/sport. These risks include, but are not limited to, variations in snow, steepness and terrain, ice and icy conditions, moguls, rocks, trees, and other forms of forest growth or debris (above or below the surface), bare spots, lift terminals, cables, utility lines, snowmaking equipment and component parts, and other forms or natural or man made obstacles on and/or off chutes, as well as collisions with equipment, obstacles or other snowtubes. Snow chute conditions vary constantly because of weather changes and snowtubing use. Be aware that snowmaking and snow grooming may be in progress at any time. These are some of the risks of SNOWTUBING. All of the inherent risks of SNOWTUBING present the risk of serious and/or fatal injury.
3. I agree to hold harmless and indemnify Powder Ridge, White Water Mountain Resorts of Connecticut, Inc. and/or any employee of the afore mentioned for loss or damage, including any loss or injuries that result from damages related to the use of a snowtube or lift.
 I, the undersigned, have read and understand the above release of liability.
CT Page 3594
DATE:__________
NAME (PLEASE print clearly): ___________________________
STREET, APT., ADDRESS: _________________________
CITY:_________ STATE:_________ ZIP:_________
 _________________________ SIGNATURE
 _______________________________ PARENT OR GUARDIAN IF UNDER 18
No oral explanation of this document was given. Malin signed it, allegedly without reading it. She then went to the snowtubing area. On her second time down the hill, she was injured in an accident.
Malin commenced this action against White Water by service of process on November 18, 1999. Her complaint consists of one count sounding in negligence. She alleges that a White Water employee pushed her tube in too hard a manner. She also alleges that White Water did not warn her of dangerous icy conditions prevailing on the day in question.
On January 8, 2001, White Water filed the motion for summary judgment now before the court. The motion relies exclusively on what White Water views as the preclusive effect of the document signed by Malin. The motion was heard on March 12, 2001.
"The law does not favor contract provisions which relieve a person from his own negligence." Griffin v.Nationwide Moving Storage Co., 187 Conn. 405, 413,446 A.2d 799 (1982).This antipathy has deep roots in Connecticut jurisprudence. See Welch v. Boston AlbanyR.R., 41 Conn. 333, 342 (1874). While "[s]uch provisions . . . have been upheld under proper circumstances";Griffin v. Nationwide Moving Storage Co., supra,187 Conn. at 413; the provision presented here cannot be so upheld.
Because releases from future damages caused by CT Page 3595 negligence are not favored, "if possible, the contract will be construed not to confer this immunity." 8 SAMUEL WILLISTON, A TREATISE ON THE LAW OF CONTRACTS § 19:24 at 301-03 (4th ed. 1998) ("Williston"). The law disfavors exculpatory contracts "because they tend to allow conduct below the acceptable level of care."Yauger v. Skiing Enterprises, Inc., 557 N.W.2d 60, 62
(Wis. 1996). This does not mean that contracts of this description are automatically void and unenforceable. Rather, the courts closely examine the particular agreements in question. "Language inserted by a party in an agreement for the purpose of exempting him from liability for negligent conduct is scrutinized with particular care and a court may require specific and conspicuous reference to negligence under the general principle that language is interpreted against the draftsman." RESTATEMENT (SECOND) OF CONTRACTS § 195 cmt. b (1981).
Judicial scrutiny is relaxed in a purely commercial setting. Business executives "can bargain over which party is to bear the risk of damage and set the price accordingly, thus achieving a more rational distribution of the risk than the law would otherwise allow." Jig theThird Corp. v. Puritan Marine Insurance UnderwritersCorp., 519 F.2d 171, 176 (5th Cir. 1975), cert.denied, 424 U.S. 954 (1976). Connecticut law allows this leeway to parties dealing in a business context. SeeBurkle v. Car Truck Leasing Co., 1 Conn. App. 54,467 A.2d 1255 (1983); Laudano v. General Motors Corp.,34 Conn. Sup. 684, 388 A.2d 842
(App. Sess. Super. Ct.), cert. denied, 174 Conn. 772, 379 A.2d 373 (1977).
The situation is otherwise with respect to the use of preprinted forms used "by professional service providers in the course of dealing with the general public."Mattegat v. Klopfenstein, 50 Conn. App. 97, 103-04,717 A.2d 276, cert. denied, 247 Conn. 922, 722 A.2d 810
(1998). In cases of this latter description, exculpatory contracts receive careful judicial scrutiny. As the Court of Appeals of Maryland has pithily observed, unless the contract "clearly, unequivocally, specifically, and unmistakably express[es] the parties' intention to exculpate the [defendant] from liability resulting from its own negligence, the [contract] is insufficient for that purpose." Adloo v. H. T. BrownCT Page 3596Real Estate, Inc., 686 A.2d 298, 305 (Md. 1996). See 8 Williston, supra, § 19:24 at 307. An obligation to indemnify a party against its own negligence will not be given effect "in the absence of language which itself compels such a result." Goldman v. Ecco-Phoenix ElectricCorp., 396 P.2d 377, 379 (Cal. 1964).
The release sought to be enforced here fails this test. Although White Water argues that the preprinted form in question relieves it from liability for its own negligence, the word "negligence" nowhere appears in the form. The form does not expressly release White Water from its own negligence. The form enumerates several "inherent" risks in snowtubing, but the negligence of White Water and its employees are not included in the list. "In the skiing context, an inherent risk is one that cannot be removed through the exercise of due care if the sport is to be enjoyed." Brett v. Great AmericanRecreation, Inc., 677 A.2d 705, 715 (N.J. 1996). The essence of Malin's claim is that she was injured because a White Water employee pushed her snow tube too hard and because White Water failed to warn her of dangerous icy conditions prevailing on the day in question. Neither an employee's excessive pushing nor a failure to warn of dangerous prevailing conditions is an "inherent" risk of snowtubing. Although the form absolves White Water from the inherent risks of snowtubing, it fails to state that White Water's negligence is one of those inherent risks. Under these circumstances, the form does not absolve White Water of the negligence complained of in this case. See Yauger v. Skiing Enterprises, Inc.,supra, 557 N.W.2d at 64.
The motion for summary judgment is denied.
Jon C. Blue Judge of the Superior Court